Steven C. Schroer *(pro hac vice)*
Nicholas T. Peters *(pro hac vice)*
Ted S. P. Li *(pro hac vice)*
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicago, IL 60603
Telephone: 312-577-7000
Facsimile:  312-577-7007
E-mail: scschr@fitcheven.com
       ntpete@fitcheven.com
       tli@fitcheven.com

Dion N. Cominos (SBN: 136522)
Mark C. Russell (SBN: 208865)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415-986-5900
Facsimile:  415-262-3714
E-mail:  dcominos@gordonrees.com
        mrussell@gordonrees.com

*Attorneys for Defendants,*
*James Novak and Attorney Yellow Pages.com LLC*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ADVICE COMPANY, a California corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>JAMES NOVAK, an individual, and ATTORNEY YELLOW PAGES.COM, LLC, an Arizona limited liability company, and DOES 1-10,<br><br>                    Defendants.<br>_____/ | Case No. 3:08-CV-01951-JCS<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TRANSFER**<br><br>Date:    July 25, 2008<br>Time:     9:30 a.m.<br>Room:  A<br>Judge:  Hon. Joseph C. Spero |

REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR TRANSFER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ 1

I.      INTRODUCTION.............................................................................................................. 2

II.     THE COURT LACKS PERSONAL JURISDICTION OVER
        DEFENDANTS .................................................................................................................. 2

        A.      Plaintiff fails to show that Defendants had continuous and systematic
                contacts with California ...................................................................................... 2

        B.      Plaintiff fails to show that there is specific jurisdiction over the AYPC.......... 4

                1.      AYPC does not have sufficient minimum contacts with
                        California because AYPC's website is passive ...................................... 5

                2.      Plaintiff fails to show purposeful availment by Defendants ................. 6

                3.      Plaintiff fails to show purposeful direction by Defendants ................. 7

                4.      Plaintiff fails to show that its cause of action arises out of
                        Defendants' alleged contacts with California....................................... 8

                5.      Exercising personal jurisdiction over Defendants would be
                        completely unreasonable ........................................................................ 8

                6.      Plaintiff's meritless personal attacks on Mr. Novak fail to show
                        purposeful availment or direction by Mr. Novak individually............. 9

III.    THE NORTHERN DISTRICT OF CALIFORNIA IS NOT A PROPER
        VENUE............................................................................................................................. 10

IV.     ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION
        TO THE DISTRICT OF ARIZONA ............................................................................. 11

V.      CONCLUSION ............................................................................................................... 12

1

### TABLE OF AUTHORITIES

2

**Cases**

3

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*
  293 F.3d 707 (4th Cir. 2002) ................................................................ 4

4

*Arnold Fashion LP v. Celeb Sales Inc.*
  1999 U.S. App. LEXIS 4745 (9th Cir. 1999) ..................................... 10

5

6

*B&B Hardware, Inc. v. Hargis Indus., Inc.*
  2006 U.S. Dist. LEXIS 96381 (N.D. Cal. 2006) ........................... 11, 12

7

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*
  223 F.3d 1082 (9th Cir. 2000) ...................................... 3, 6, 7, 9

8

9

*Cybersell Inc. v. Cybersell, Inc.*
  130 F.3d 414 (9th Cir. 1997) ................................................... 5

10

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,*
  557 F.2d 1280, 1284 (9th Cir. 1977) ......................................... 2

11

12

*Econ. Research Services, Inc. v. Northwestern Corp.,*
  2007 U.S. Dist. LEXIS 95441, 7 (N.D. Cal. 2007) ......................... 2

13

*Gehling v. St. George's Sch. of Med.,*
  773 F.2d 539 (3rd Cir. 1985) ....................................................... 3

14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
  466 U.S. 408 (1984) ...................................................................... 3

15

16

*Mink v. AAAA Dev. LLC*
  190 F.3d 333(5th Cir. 1999) ......................................................... 5

17

*New Generation Devices, Inc. v. Slocum Enterprises, Inc.,*
  2005 U.S. Dist. LEXIS 28118, 14 (Dist. N.J. 2005) ....................... 2

18

19

*Panavision Int'l, L.P. v. Toeppen*
  141 F.3d 1316 (9th Cir. 1998) ............................................... 7, 8

20

*Pebble Beach Co. v. Caddy*
  453 F.3d 1151 (9th Cir. 2006) ...................................... 4, 6, 7, 8

21

22

*Rio Properties, Inc. v. Rio Int'l Interlink*
  84 F.3d 1007 (9th Cir. 2000) ................................................ 7, 8

23

*U.S. Merch. Sys., LLC v. A Furniture Homestore LLC,*
  2007 U.S. Dist. LEXIS 35511, 4 (N.D. Cal. 2007) ......................... 2

24

25

*Zippo Manufacturing Co. v. Zippo Dot Com Inc.*
  952 F.Supp. 1119 (W.D. Pa. 1997) ........................................ 5, 6

26

27

28

## I.    INTRODUCTION

Plaintiff, recognizing that it bears the burden of proof, presents multiple declarations and exhibits in an attempt to create the appearance of a record supporting the assertion of personal jurisdiction.  But none of the information plaintiff submits rises to the level of evidence. There is ultimately nothing more than the self-serving and conclusory speculation of Plaintiff's employees, mere allegations that are factually incorrect, as shown by the Supplemental Declaration of James E. Novak in Support of Defendants' Motion to Dismiss or Transfer ("Ex. C").  This is clearly insufficient to meet Plaintiff's burden.  "Once the defendant has contradicted allegations contained in the complaint, plaintiff may not rest on the pleadings, **but must present admissible evidence**, which if believed, would support the court's exercise of personal jurisdiction."  *Econ. Research Services, Inc. v. Northwestern Corp.*, 2007 U.S. Dist. LEXIS 95441, 7 (N.D. Cal. 2007) (emphasis supplied) *citing Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977); *see U.S. Merch. Sys., LLC v. A Furniture Homestore LLC*, 2007 U.S. Dist. LEXIS 35511, 4 (N.D. Cal. 2007).

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

### A.    Plaintiff fails to present admissible evidence that Defendants had continuous and systematic contacts with California

As Plaintiff acknowledges, "[t]he exercise of general jurisdiction requires that the defendant's contacts with the forum be so 'continuous and systematic' as to approximate a physical presence in the district."  (Pl.'s Opp'n at 3.)  Nevertheless, Plaintiff utterly fails to provide any cognizable evidence of such continuous and systematic contacts.

Plaintiff alleges that AYPC's website displays attorney listings for the use of California residents and at the same time speculates that AYPC attaches "cookies" to these visitors' computers.  However, Plaintiff does not offer any evidence that California residents, other than Plaintiff's own employees, have visited AYPC's website, much less any evidence that California residents have done so **continuously and systematically**.  *See New Generation Devices, Inc. v. Slocum Enterprises, Inc.*, 2005 U.S. Dist. LEXIS 28118, 14 (Dist. N.J. 2005) ("plaintiff did not demonstrate by a preponderance of the evidence that any New Jersey users have actually

accessed the limited mechanisms available on the website […] to subject defendants to personal

jurisdiction based on the mere possibility that a New Jersey user could access these website

features is inconsistent with the requirements of due process.").  This is not surprising as even

Plaintiff's own employee admits in reference to AYPC's total traffic: "the traffic that

Defendants' www.AttorneyYellowPages.com receives is miniscule."  (Brown Decl. at ¶ 20.)

Moreover, Plaintiff's allegation that AYPC uses "cookies" to send California visitors targeted

advertisements is simply false.  (Ex. C, ¶ 22.)  The "cookies" merely record "hits" on the AYPC

website, and do not initiate active dialogue with California residents. (Ex. C, ¶¶ 21-22.)

Plaintiff also alleges that "Defendants' Website continuously solicits lawyers in

California to pay to advertise on the site."  (Pl.'s Opp'n at 3.)  This rests on speculation by one of

Plaintiff's employees that AYPC had an advertising agreement with a single California law firm.

(Fraser Decl. at ¶¶ 3-5.)  However, the truth is that AYPC has never had any such agreements

with any California attorneys or law firms, including the one law firm referenced in Plaintiff's

declaration, much less enough agreements to constitute continuous and systematic contact.  (Ex.

C, ¶ 16.)

Plaintiff argues that Defendants' participation in advertising programs created by Google

constitutes continuous and systematic contacts because Google has offices located in California.

This argument is meritless.  Even the case cited by Plaintiff in its Opposition brief as setting

forth the standard for determining when to exercise general jurisdiction specifically held that

such contacts are irrelevant.  *See Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082,

1086 (9th Cir. 2000) (the defendant's license agreements with two television networks and a

handful of California vendors do not constitute doing business in California and is not the kind of

activity that approximates physical presence within the state) *citing Helicopteros Nacionales de

Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).  Moreover, Defendants have never had any

direct contact whatsoever with Google's California headquarters.  (Ex. C, ¶ 17.)  All AYPC did

was – in Arizona – fill out a form on Google's website.  (Ex. C, ¶ 17.)

Plaintiff's attempted reliance on AYPC's limited advertising efforts in the form of

random mailings to attorneys and law firms throughout the nation is also misplaced.  *See*, *e.g.*,

1    *Gehling v. St. George's Sch. of Med.*, 773 F.2d 539, 542 (3rd Cir. 1985) (advertising in national

2    publications does not constitute continuous and substantial contacts).  Moreover, Plaintiff's

3    characterization of a single advertisement that appeared in only two issues of the Los Angeles

4    Bar Association magazine as somehow "continuous and systematic" falls of its own weight.

5           Lastly, Plaintiff's brief alleges that "Novak solicited the sale of Defendants' Domain

6    Name to Plaintiff," citing paragraph 8 of Plaintiff's CEO's declaration.  (Pl.'s Opp'n at 3.)  This

7    alleged incident a single, isolated, contact.  More importantly, it was **initiated by Plaintiff**, *i.e.* a

8    telephone call **to** Mr. Novak in Arizona.  Plaintiff's brief simply mischaracterizes Mr.

9    Goldscholle's declaration.  Mr. Goldscholle's declaration does **not** ever state that Mr. Novak

10   called him in California or offered to sell AYPC's website to Plaintiff.  (Goldscholle Decl. at ¶

11   8.)  Mr. Goldscholle's declaration is entirely consistent with Mr. Novak's testimony that he did

12   not offer to sell AYPC's website to Plaintiff.  (Ex. C, ¶ 11.)

13          Far from offering evidence of continuous and systematic contacts between Defendants

14   and the State of California, Plaintiff proffers only meritless speculations and isolated contacts

15   that have been held to be insufficient as a matter of law.  As shown *infra*, these same allegations

16   are insufficient even for exercising specific jurisdiction, much less general jurisdiction.  *ALS*

17   *Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002).  Therefore, the

18   Court should grant Defendants' motion to dismiss.

19          **B.       Plaintiff fails to show that there is specific jurisdiction over the AYPC**

20          Defendants do not have sufficient minimum contacts with the Northern District of

21   California such that the assertion of personal jurisdiction is consistent with "traditional notions of

22   fair play and substantial justice."  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir.

23   2006).  For this Court to assert specific jurisdiction over Defendants, the Court must determine

24   that "(1) the defendant has performed some act or consummated some transaction within the

25   forum or otherwise purposefully availed himself of the privileges of conducting activities in the

26   forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3)

27   the exercise of jurisdiction is reasonable."  *Id.*

28

1          **1.     AYPC does not have sufficient minimum contacts with California**
2               **because AYPC's website is passive**

3          The first prong of the minimum contacts test is not satisfied where a plaintiff is alleging

4   trademark infringement over the internet based on the defendant's use of an essentially passive

5   website.  *Cybersell Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997).  "Otherwise, every

6   complaint arising out of alleged trademark infringement on the Internet would automatically

7   result in personal jurisdiction wherever the plaintiff's principal place of business is located. That

8   would not comport with traditional notions of what qualifies as purposeful activity invoking the

9   benefits and protections of the forum state."  *Id.*

10          At one end of the spectrum, where personal jurisdiction is proper, is a defendant that

11  "enters into contracts with residents of a foreign jurisdiction that involve the knowing and

12  repeated transmission of computer files over the Internet."  *Zippo Mfg. Co. v. Zippo Dot Com*

13  *Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).  At the other end, where exercising personal

14  jurisdiction is unconstitutional, is "[a] passive Web site that does little more than make

15  information available to those who are interested…."  *Id.*  "The middle ground is occupied by

16  interactive Web sites where a user can exchange information with the host computer.  In these

17  cases, the exercise of jurisdiction is determined by examining the level of interactivity and

18  commercial nature of the exchange of information that occurs on the Web site."  *Id.*

19          The record is clear that AYPC is merely a passive website as defined in *Zippo*.  AYPC's

20  website does not even approach the "middle ground" as defined by *Zippo,* because there is no

21  way for a user to exchange information with AYPC through that website.  For example, there are

22  no mailing lists for users to sign up to receive information such as newsletters, nor are there any

23  message boards for users to post messages on.  (Ex. C, ¶ 13.)  The listing of an email address on

24  the website does not make it interactive.  *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir.

25  1999) (website with "printable mail-in order form, [defendant's] toll-free telephone number, a

26  mailing address and an [e-mail] address" is passive and "is insufficient to establish personal

27  jurisdiction.").  Nor does the fact that a visitor can click on a Google ad, something that's

28  controlled entirely by Google and not by AYPC.  (Ex. C, ¶ 19).  Though Plaintiff attempts to

1  make a big deal out of the Google Checkout button, the irrefutable fact is that AYPC has never

2  received any orders through Google Checkout, has not activated the function, and has never

3  intended to activate the function.  (Ex. C, ¶¶ 24-29.)  A user simply cannot actively exchange

4  information with AYPC through its website including the non-activated Google Checkout

5  button.

6         AYPC's website is clearly a passive website that "does little more than make information

7  available to those who are interested."  *Zippo*, 952 F.Supp. 1124.  Even Plaintiff acknowledges

8  that AYPC's website's "most important service to users is to provide them listings of legal

9  services providers."  (Pl.'s Opp'n at 7.)  Though Plaintiff contends that this is not passive, it fails

10 to cite **any** admissible evidence to support that conclusion or any legal authority to support its

11 position.  Plaintiff's contention directly contradicts the clear definition of what constitutes a

12 "passive website" set forth in *Zippo* and the numerous cases that follow it, *i.e.*, a "website that

13 does little more than make information available to those who are interested in it."  *Id*.

14 Therefore, the Court should grant Defendants' motion to dismiss.

15            **2.    Plaintiff fails to show purposeful availment by Defendants**

16         The first prong of the minimum contacts test is further divided into two distinct concepts:

17 "purposeful availment," *i.e.*, conduct by the defendant "taking place in the forum that invokes the

18 benefits and protections of the laws in the forum" and "purposeful direction," *i.e.*, conduct by the

19 defendant "taking place outside the forum that is directed at the forum."  *Pebble Beach*, 453 F.3d

20 at 1155.

21         Contrary to Plaintiff's speculation, AYPC does not have any advertising agreements

22 with, or received any revenue from, the Law Office of Brian D. Lerner or any other California

23 attorney or law firm.  (Ex. C, ¶ 16.)  Nor has AYPC had any contact with Google's headquarters

24 in Mountain View, California.  (Ex. C, 17.)  In all even isolated agreements with such third-party

25 companies "do not constitute doing business in California."  *Bancroft*, 223 F.3d at 1086.

26 Moreover, though Plaintiff repeats ad nauseam its allegation that AYPC is receiving revenue

27 from California visitors clicking on Google ads, Plaintiff has offered absolutely no admissible

28 evidence in this regard.  Indeed, even if the Court is to assume that there have been California

REPLY MEMORANDUM IN SUPPORT OF                                                                    6
DEFENDANTS' MOTION TO DISMISS OR TRANSFER                    CASE NO. 3:08-CV-01951-JCS

1   visitors on AYPC's website, and further assume that the visitors clicked on the Google ads

2   located there, the fact remains that any such interaction is handled and controlled by Google, not

3   AYPC.  (Ex. C, ¶ 19.)  Therefore, the Court should grant Defendants' motion to dismiss.

4                    **3.      Plaintiff fails to show purposeful direction by Defendants**

5           For "purposeful direction," Plaintiff must satisfy the *Calder* "effects" test by showing

6   that Defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum

7   state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is

8   likely to be suffered in the forum state."  *Pebble Beach*, 453 F.3d at 1156.  Plaintiff has failed to

9   do so.

10          Despite the artful mischaracterization of Mr. Goldscholle's declaration in Plaintiff's brief,

11  the fact remains that Mr. Novak did **not** offer to sell AYPC's website to Plaintiff.  (Ex. C, ¶ 11.)

12  Moreover, Plaintiff obviously recognizes that AYPC's website is a legitimate commercial

13  website, given its own employee's outline of what he believe to be AYPC's business model.

14  (Brown Decl. at ¶¶ 5-15.)  This is nothing like *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316

15  (9th Cir. 1998) where the defendant, as part of his modus operandi, registered the domain name

16  at issue not for actual commercial use but solely as part of a plan to extort money from the

17  plaintiff.  *See Pebble Beach*, 453 F.3d at 1156.

18          Nor does this case resemble *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d

19  1082 (9th Cir. 2000) where the defendant sent a cease and desist letter to the plaintiff and also

20  initiated proceedings challenging plaintiff's use of a domain name.  *Bancroft*, 223 F.3d at 1085.

21  To the contrary, it is Plaintiff who sent out the cease and desist letter and who initiated a

22  cancellation proceeding before the Trademark Trial and Appeal Board.  (Goldscholle Decl. at ¶¶

23  7 and 9.)

24          Plaintiff's reference to *Rio Properties, Inc. v. Rio Int'l Interlink*, 84 F.3d 1007 (9th Cir.

25  2000) is also meritless.  AYPC's extremely limited advertising simply cannot be equated with

26  "an insistent marketing campaign" that included print advertisements in multiple publications as

27  well as repeated radio advertisements.  *Id.* at 1020.  Moreover, the court in *Rio* specifically

28  pointed out the plaintiff's "gambling empire" and world famous casinos as well as the fact that

1  the defendant was "[f]ar from a penny ante operation," grossing an estimated $3 million

2  annually. *Id.* at 1012. The court also noted that the forum at issue, Las Vegas, Nevada, was "the

3  capital of the gambling industry." *Id.* at 1020. Thus, there was no question in *Rio* that the

4  defendant knew that its actions would affect the plaintiff. In contrast, here, while Plaintiff's 20

5  employee operation is significantly larger than AYPC, there is no evidence that it is a world

6  famous giant in the legal directory industry nor is there any evidence that San Francisco is a

7  mecca for people seeking to make use of legal directories on the internet. In other words,

8  Plaintiff has failed to present and evidence that Defendants committed an intentional act

9  expressly aimed at California which they expected to cause harm to Plaintiff in California.

10 Therefore, the Court should grant Defendants' motion to dismiss.

### 4. Plaintiff fails to give evidence that its cause of action arises out of Defendants' alleged contacts with California

13 The second prong of the minimum contacts test requires Plaintiff to show that its cause of

14 action arises out of the alleged contacts between Defendants and the State of California. *See*

15 *Pebble Beach*, 453 F.3d at 1155. Instead, Plaintiff cites three cases addressing venue, **not**

16 personal jurisdiction. (Pl.'s Opp'n at 9-10.) Moreover, Plaintiff's repeated attempts to rely on

17 *Panavision,* where the defendant was purposefully attempting to extort money from the plaintiff,

18 is unmerited given the entirely dissimilar facts involved. As shown in Defendants' initial

19 memorandum, Plaintiff's cause of action does not arise out of the alleged contacts between

20 Defendants and the State of California because it fails the "but for" test. (Defs.' Mem. at 6-7.)

### 5. Exercising personal jurisdiction over Defendants would be unreasonable

23 Plaintiff also fails to show that exercising jurisdiction over Defendants would be

24 reasonable, the third and final requirement for specific jurisdiction. *See Pebble Beach*, 453 F.3d

25 at 1155. The clear fact of the matter is that all of AYPC's revenue is generated almost

26 exclusively from advertising agreements with Arizona attorneys and law firms, the core of

27 AYPC's business. (Ex. C, ¶ 15.) AYPC has no such agreements with any California attorneys

28 or law firms, and never had. (Ex. C, ¶ 16.) The remainder of AYPC's income – a measly $400 –

1   came from AYPC's participation in programs like Google's AdSense, participation that involved

2   no demonstrated contact with California.  (Ex. C, ¶ 17.)  Such relationships with third-party

3   business cannot be used to establish personal jurisdiction.  *See Bancroft & Masters*, 223 F.3d at

4   1086.  Given the dominating presence of Google in the Internet industry, to drag a party into

5   California merely because it had some business interaction with Google would effectively

6   remove all jurisdictional barriers.  Moreover, to exercise personal jurisdiction over Defendants

7   over approximately $400 in income accrued via Google , with no evidence what, if any, portion

8   of that resulted from California residents visiting AYPC's website, would be the antithesis of

9   reasonableness.

10          The clear unreasonableness of Plaintiff's contention is evidenced in Plaintiff's inability to

11  present arguments without contradicting itself.  For example, Plaintiff suggests that the burden

12  on Defendants is negligible, stating that "this is not a complex case that will require multiple

13  depositions, production of thousands of documents and testimony by many witnesses," cites to

14  the existence of "fax machines and discount air travel," and points out the fact that California

15  and Nevada are adjacent.  (Pl.'s Opp'n at 11.)  However, when it comes to the burden on

16  Plaintiff to try its case in Nevada, it would suddenly "seriously inconvenience Plaintiff."  (Pl.'s

17  Opp'n at 11.)  The objective fact is that Plaintiff is a far larger company that Defendants, and the

18  relative inconvenience is far more burdensome on Defendants.

19          As discussed in Defendants' initial memorandum, the overall balance of the seven factors

20  relevant to inquires as to reasonableness plainly call for the Court to decline to exercise personal

21  jurisdiction over Defendants.  (Defs.' Mem. at 7-9.)  Therefore, the Court should grant

22  Defendants' motion to dismiss.

23          **6.      Plaintiff's meritless personal attacks on Mr. Novak fail to show**
                    **purposeful availment or direction by Mr. Novak individually**
24

25          Plaintiff does not even attempt to provide evidence of contacts between Mr. Novak in his

26  individual capacity and the State of California.  There are no such contacts.  (Defs.' Mem., Ex.

27  A. ¶¶ 11-14.)  Instead, Plaintiff makes a single conclusory assertion, based on nothing more than

28  the fact that AYPC is a small limited liability company with only two members, that "if AYPC

REPLY MEMORANDUM IN SUPPORT OF                                                              9
DEFENDANTS' MOTION TO DISMISS OR TRANSFER                      Case No. 3:08-CV-01951-JCS

1    does business in this District, by extension Novak does as well." (Pl.'s Opp'n at 9.) As shown

2    *supra*, AYPC does not do business in the Northern District of California. Moreover, Plaintiff

3    would purport to pierce the corporate veil of AYPC simply because it is a small startup company

4    that only has two members. Unsurprisingly, Plaintiff cites absolutely no authority for such a

5    draconian result. "Under California law, there is no litmus test to determine when the corporate

6    veil will be pierced, and the result will depend on the circumstances of each particular case.

7    Nevertheless, there are two general requirements that must be met: (1) that there be unity of

8    interest and ownership between the corporation and individual; and (2) that, if the acts in

9    question are treated as those of the corporation alone, an inequitable result will follow." *Arnold*

10   *Fashion LP v. Celeb Sales Inc.*, 1999 U.S. App. LEXIS 4745, 10-11(9th Cir. 1999). Plaintiff has

11   presented no evidence to support piercing AYPC's corporate veil.

12          Perhaps recognizing the utter lack of merit to its assertion, Plaintiff resorts to collateral

13   attacks on Mr. Novak's credibility, questioning his education and time in the legal industry.

14   (Brown Decl. at ¶¶ 21 and 22.) Such petty allegations have no bearing on the issues before the

15   Court, are based again on little more than sheer speculation, and are simply meritless. (Ex. C, ¶¶

16   3-5.) Plaintiff also questions the fact that Mr. Novak has not been in California for 23 years and

17   has not had time off in several years without offering **any** basis for doing so. Incredibly,

18   Plaintiff even goes so far as to imply that Mr. Novak is lying about his disabled wife's condition!

19   (Pl.'s Opp'n at 9.) Mr. Novak is willing to submit evidence on this issue to the Court *in camera*

20   if necessary. Nevertheless, Plaintiff has offered not a shred of evidence to justify such a personal

21   attack. Such tactics should not be condoned.

22   **III.    THE NORTHERN DISTRICT OF CALIFORNIA IS NOT A PROPER VENUE**

23          Plaintiff acknowledges that this action is not founded solely on diversity of citizenship

24   and contends that the Northern District is the proper venue based solely on its assertions that

25   Defendants are subject to personal jurisdiction in California. As discussed *supra*, Defendants do

26   not have sufficient contacts with California for the exercise of personal jurisdiction. Nor is there

27   any other basis for venue in the Northern District of California since Defendants do not reside

28   here and do not have any offices, employees, or other assets or property here. (Defs.' Mem. at 9-

1    10.)  Therefore, the Court should grant Defendants' motion to dismiss for lack of proper venue.

2    **IV.    ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION TO**

3    **THE DISTRICT OF ARIZONA**

4         Plaintiff begins its opposition to transferring this action to Arizona by repeating its

5    assertion that AYPC's has an interactive website.  (Pl.'s Opp'n at 12-13.)  As shown *supra*, this

6    contention is meritless.  Plaintiff's assertion that "[i]t would be a **huge** burden on Plaintiff if this

7    case were transferred to Arizona" because Plaintiff "is a relatively small company with fewer

8    than **20** regular full time employees and equivalents" is also meritless.  (Pl.'s Opp'n at 14,

9    emphasis supplied.)  As Plaintiff pointed out, AYPC only has **two** members.  (Perry Decl. at ¶

10   3.)  Thus, Plaintiff has nearly ten times the number of employees as AYPC.  If it would be a

11   "huge" burden on Plaintiff to litigate in Arizona, it must be nearly ten times the burden on AYPC

12   for it to litigate in California.

13        Plaintiff next suggests that because Mr. Novak has thus far been able to managed both his

14   professional workload and take care of his disabled wife, he should have no problem adding on

15   the burden of defending himself in a lawsuit in California.  This argument displays a lack of

16   common logic, much less routine human decency.  Based on Plaintiff's reasoning, it would be

17   impossible for someone to ever be overburdened because he or she will always be able to "make

18   similar arrangements."  (Pl.'s Opp'n at 15.)

19        Plaintiff then once again pleads that it will be "severely inconvenienced" should the case

20   be transferred to Arizona, arguing that it would have to produce "more voluminous" amounts of

21   evidence.  (Pl.'s Opp'n at 15.)  However, given the approximately 20 full time employees at

22   Plaintiff's disposal (at least two of whom appears to have spent considerable time combing

23   through AYPC's website) and Plaintiff's own assessment that "this is not a complex case that

24   will require … production of thousands of documents," surely Plaintiff will not be as

25   inconvenienced as it would like the Court to belief.  (Pl.'s Opp'n at 11, 14-15.)

26        Plaintiff's attempt to distinguish *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 2006 U.S.

27   Dist. LEXIS 96381 (N.D. Cal. 2006) is similarly without substance.  AYPC's website is clearly

28   the "product" at issue and "the design, development and production" of this website is obviously

1    a central part of this case.  *Id.* at 4.  Further, Plaintiff's quotation from *B&B Hardware* as support

2    for giving "substantial weight" to Plaintiff's choice of forum is at best a half truth.  (Pl.'s Opp'n

3    at 15.)  Though the court acknowledged that "**ordinarily** the plaintiff's choice of forum is

4    entitled to 'substantial weight,'" it immediately proceeded to explain why on the particular facts

5    that factor actually weighed in favor of transfer.  *Id.* at 10-12.  One of the main reasons being the

6    fact that the defendant there only had 0.1% of customers and 2% of sales revenue from the State

7    of California.  *Id.* at 11-12.  This is directly analogous to the situation here, where AYPC has 0%

8    of customers and at most approximately $400 in accrued but unclaimed income from Google that

9    **might** relate to the State of California.  (Ex. C, ¶¶ 15-16.)

10          Notably, Plaintiff does not dispute that this action could have been brought in the District

11   of Arizona.  Plaintiff also fails to address, and thus concedes, the fact that such a transfer serves

12   the interest of justice given the substantial questions over personal jurisdiction in California.

13   (Defs.' Mem. at 11.)  Plaintiff further concedes that the convenience of witnesses also favor

14   transfer by failing to name any witnesses in California and by choosing not to dispute that likely

15   witness include the businesses that created AYPC's website, and that designed and printed all of

16   AYPC's advertising material, as well as Defendant's customers, all of whom reside in Arizona.

17   (Defs.' Mem. at 13.)  This is especially important factor given the difficulty, if not impossibility,

18   of making sure such out of state witness appear in court in California.  Moreover, the

19   convenience of the witnesses is "[o]ften considered the most important factor."  *Id.* at 14.

20   Therefore, the Court should transfer this action to the District of Arizona.

21   **V.    CONCLUSION**

22          It was Plaintiff's burden to present admissible evidence showing that the Court should

23   exercise personal jurisdiction over Defendants in this action.  Instead, Plaintiff merely presents

24   bare allegations that are based on nothing more than speculation by its employees.  Therefore,

25   this action should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction and Rule

26   12(b)(3) for improper venue.  Alternatively, this action should be transferred to the District of

27   Arizona.

28

1

2                                                     Respectfully submitted,

3    Dated:_____July 7, 2008_____          s/   Ted S. P. Li_____
                                             Steven C. Schroer (*pro hac vice*)
4                                            Nicholas T. Peters (*pro hac vice*)
                                             Ted S. P. Li (*pro hac vice*)
5                                            FITCH, EVEN, TABIN & FLANNERY
                                             120 South LaSalle Street, Suite 1600
6                                            Chicago, IL  60603
                                             Telephone:  312-577-7000
7                                            Facsimile:  312-577-7000

8
                                             Dion N. Cominos
9                                            Mark C. Russell
                                             GORDON & REES LLP
10                                           275 Battery Street, Suite 2000
                                             San Francisco, CA 94111
11                                           Telephone:  415-986-5900
                                             Facsimile:  415-262-3714
12

13                                           *Attorneys for Defendants,*
                                             *James Novak and Attorney Yellow Pages.com*
14   512864

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF                                                    13
DEFENDANTS' MOTION TO DISMISS OR TRANSFER          CASE NO. 3:08-CV-01951-JCS

# EXHIBIT C

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

ADVICE COMPANY, a California
corporation,

        Plaintiff,

vs.

JAMES NOVAK, an individual, and
ATTORNEY YELLOW PAGES.COM, LLC,
an Arizona limited liability company, and
DOES 1-10,

        Defendants.

Case No. 3:08-CV-01951-JCS

**SUPPLEMENTAL DECLARATION OF
JAMES E. NOVAK IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
OR TRANSFER**

I, James E. Novak, hereby declare and state the following:

1.    I have read the MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER and the declarations and exhibits attached thereto. I submit this declaration to correct several obvious factual errors in plaintiff's factual arguments in response to defendants' motion to dismiss or transfer, much of which is incorrect speculation.

2.    I have personal knowledge of the matters set forth herein.

3.    After serving in the United States Marines Corps, I obtained a B.S. in Industrial Technology from the University of Massachusetts at Lowell and then a J.D. from Thomas M. Cooley Law School in Michigan.

4.    It has been approximately 14 years since I first entered the law practice industry as an intern with a prosecutor's office in Michigan, then again as an intern with a second prosecutor's in Maricopa County, Arizona and then later as an attorney in Arizona.

5.    I also have a Masters in Education from Northern Arizona University, and an MBA in Management from Arizona Western International University, Arizona.

6.    My experience as a practicing attorney with my own law firm which required an ongoing understanding and active involvement of legal marketing (both print YellowPages and

-1-

SUPPLEMENTAL DECLARATION OF JAMES E. NOVAK

CASE NO. 3:08-CV-01951-JCS

1  Internet) and my MBA studies led me to the creation of a Yellow Pages directory for attorneys
2  thus the formation of Attorney Yellow Pages.com, LLC ("AYPC"), a limited liability company
3  in good standing and organized under the laws of the State of Arizona.

4      7.    In November of 2007, I received a letter from Plaintiff threatening suit over the
5  ATTORNEYYELLOWPAGES.COM trademark.

6      8.    Shortly after the cease and desist letter, the parties began settlement negotiations
7  through their respective counsel. On or about December 6, 2007, Plaintiff's counsel stated that
8  Mr. Goldsholle wished to speak with me directly and requested my personal contact information.
9  A few days later, on or about December 10, 2007, Mr. Goldscholle called me on my cellphone in
10 Arizona. I never called Mr. Goldscholle in California. My only conversation with Mr.
11 Goldscholle was to discuss possible settlement of the claims made in his cease-and-desist letter,
12 which I believed (and continue to believe) had no legal or factual basis.

13     9.    During the call, we discussed AYPC's website and Plaintiff's website, as well as
14 other law related websites such as www.findlaw.com and www.avvo.com. The conversation
15 naturally included the valuation of such sites, such as the publicly known fact that
16 www.findlaw.com was sold for $7.5 million.

17     10.   Just as with any business, AYPC and its website may be bought and sold given
18 the right circumstances. However, the ATTORNEYYELLOWPAGES domain and website was
19 **not** set up with the express intention that it be sold, to Plaintiff or anyone else. In my opinion,
20 Mr. Goldscholle brought this lawsuit as part of a heavy-handed negotiation tactic to try to drive
21 the price down and as an attempt to intimidate me to close AYPC and cancel our trademark that
22 was properly reviewed, approved and awarded by the United States Patent and Trademark
23 Office. Mr. Goldscholle knows that we are a small, startup business, and do not have resources
24 to fight a major lawsuit, particularly in a foreign jurisdiction. This is Goliath suing David in
25 Goliath's home court.

26     11.   I did **not** offer to sell AYPC's website to Plaintiff or Mr. Goldsholle for "over $2
27 million" or for any other amount. I note that Mr. Goldscholle's declaration, including paragraph
28 8 therein, does not allege otherwise.

-2-

SUPPLEMENTAL DECLARATION OF JAMES E. NOVAK                        CASE NO. 3:08-CV-01951-JCS

12.    AYPC's business is based on its website, www.attorneyyellowpages.com, that contains listings of attorneys in various practice areas. These listings were compiled from public sources, and generally represent a random assortment and percentage of actual practicing attorneys. The California attorney listings were **not** included in the AYPC website because of any solicitation by AYPC to California attorneys, and we have no contracts or other money-generating arrangements with any of the listed California attorneys. There is no active link on www.attorneyyellowpages.com to any of the California attorneys who are listed therein, only contact information. Someone accessing the website would need to utilize entirely separate means from www.attorneyyellowpages.com if contact was desired.

13.    A visitor to www.attorneyyellowpages.com cannot exchange their personal information with AYPC through the website. There are no mailing lists for a visitor to sign up for, and there are no message boards for visitors to post messages on. There is an e-mail address posted but a visitor that wishes to contact AYPC must use their own e-mail program, such as Microsoft Outlook or Yahoo Mail, to send any e-mails to AYPC. Unlike some websites, a visitor cannot even click on AYPC's e-mail address to automatically open up their e-mail program.

14.    While AYPC lists attorneys in all 50 states, its efforts are really focused on the State of Arizona. Consequently, AYPC lists approximately 56.7% of the active attorneys in Arizona, *i.e.*, approximately 7,250 listed out of 12,793 active attorneys according to recent statistics from the American Bar Association, attached as EXHIBIT D. In comparison, AYPC lists only approximately 6.2% of the active attorneys in California, *i.e.*, approximately 9180 out of 148,399. And again, as noted above, all of the listed California attorneys' information was collected from public sources, not solicitation or other communication by AYPC to California.

15.    Since its inception in 2006, AYPC has generated approximately $35,500 in total gross revenue. A total 100% of AYPC's revenue came from advertising agreements and contracts with Arizona attorneys and law firms. Additionally, there is less than $400 in unclaimed monies from third party applications that was generated through Legal Zoom (less than $50) and Google (approximately $350), again all of which is accrued, but still unclaimed by

-3-

1   AYPC. There is no basis to say that any of the accrued but uncollected Google income is

2   California-related. Further, although Google does have offices in California, public records

3   show that it is a Delaware corporation doing business in many places, including an office in

4   Arizona that I am aware of.

5       16.    AYPC has never entered into any advertising agreement with, and has never

6   received any revenue from, California attorneys or law firms. This includes the Law Office of

7   Brian D. Lerner.

8       17.    AYPC, like countless others, participates in Google's advertising programs. To

9   participate, AYPC did not have any contact with Google's headquarters in Mountain View,

10  California, be it through e-mail, regular mail, telephone, facsimile, or in person. All AYPC did

11  (in Arizona) was fill out a simple online form pick the general type of ads that Google should

12  show, *i.e.*, legal ads rather than educational, medical, etc., and insert Google's freely available

13  code into the website.

14      18.    AYPC does not have any relationship with the advertisers whose ads are

15  displayed by Google and does not even know who those advertisers are.

16      19.    Similarly, when someone visits AYPC's website, AYPC does not know what ads

17  Google chooses to display to the visitor and does not know who they are. Everything is handled

18  and controlled by Google by its automated software matrix.

19      20.    The advertisement for the Law Office of Brian D. Lerner referenced in the

20  declaration of Plaintiff's employee, Ms. Nicola A. Fraser, was not placed there by AYPC nor

21  was it removed by AYPC. Instead, it must have been an ad controlled by Google. As noted

22  above, AYPC has no relationship with Brian D. Lerner.

23      21.    The only information that AYPC has about the visitors to its site is general traffic

24  data gathered automatically by AYPC's webhost's servers through the use of "cookies." AYPC's

25  webhost is in Arizona, and to the extent "cookies" are being utilized via AYPC's Arizona

26  webhost, they are merely tracking "hits" on the website, which may be generated from any

27  location. To the best of my knowledge, this is done by just about every website in existence that

28  implements a statistical analytical program through a content management system.

-4-

22.    AYPC does not and has not used these "cookies" and the resultant traffic data to send target advertising to any California visitors.

23.    As for YouTube (which is owned by Google), is a large online video streaming company, AYPC merely utilized YouTube's freely available code, accessed from Arizona, to place a video on its website. AYPC did not have any contact with YouTube's headquarters in San Bruno, California, be it through e-mail, regular mail, telephone, facsimile, or in person. AYPC does not generate any revenue from YouTube.

24.    As with any website, the key to survival is to be recognized by search engines, a fact that has given rise to an emerging Search Engine Optimization (SEO) industry. However, for approximately eight months after it was launched, AYPC's website still was not recognized by Google, the undisputed giant among search engines.

25.    After researching this problem, one of many suggested solutions was to place applications/tools developed and provided by Google onto AYPC's website. The idea was that Google's search engine will more readily recognize and index websites with Google's own applications. Subsequently, the validity of this SEO suggestion was confirmed by the fact that after AYPC removed the Google Checkout application, monthly visits to AYPC's website by Googlebot spiders was reduced by approximately 60%.

26.    AYPC followed the suggestion by placing the Google Checkout application on its website. This was done by accessing Google's website from Arizona, and involved no California activity whatsoever. The Google application required an item to be listed for sale along with a numeric dollar amount. That is the sole reason AYPC listed the "banner ad" with an arbitrary price of $1,000.

27.    AYPC has never sold, and does not intent to sell advertising through Google Checkout or any other animated system because advertisement is custom created to fit the specific needs of that individual customer and prices vary according to the contracted listings.

28    AYPC only used Google Checkout as a means to prompt the Google search engine to recognize and index its website. AYPC did not intend to utilize the application to complete any actual sales and in fact specifically refrained from making Google Checkout

-5-

1  functional by intentionally omitting AYPC's bank account information, because it was believed
2  that Google Checkout could not process any orders without AYPC's bank account information,
3  including bank name, the tax identification number, etc. In fact, no order was ever placed, much
4  less processed, with AYPC through Google Checkout. A true and correct printout of AYPC's
5  Google Checkout account information as of July 4, 2008 is attached as EXHIBIT E. It shows no
6  transactions and reads "0-0 of 0 Orders.".

7      29.    AYPC also placed the Google Checkout button as unobtrusively as possible, on
8  the very bottom corner of one of its web pages.

9

10     I hereby declare under penalty of perjury under the laws of the United States of America
11 that the foregoing is true and correct.

12

13

14     Dated: July 4, 2008

15                                              James E. Novak

512857

17
18
19
20
21
22
23
24
25
26
27
28

-6-

SUPPLEMENTAL DECLARATION OF JAMES E. NOVAK                    CASE No. 3:08-CV-01951-JCS

# EXHIBIT D

**American Bar Association**
**National Lawyer Population by State**
Compiled by: ABA Market Research Department, 321 N. Clark St., Chicago, IL 60610

| STATE | | 2007 # ATTYS RESIDENT & ACTIVE | 2008 # ATTYS RESIDENT & ACTIVE* | INDEX |
|---|---|---|---|---|
| Alabama | AL | 12,936 | 13,231 | 102 |
| Alaska | AK | 2,303 | 2,385 | 104 |
| American Samoa | AS | 57 | 58 | 102 |
| Arizona | AZ | 12,501 | 12,793 | 102 |
| Arkansas | AR | 5,600 | 5,700 | 102 |
| California | CA | 145,355 | 148,399 | 102 |
| Colorado | CO | 18,376 | 18,894 | 103 |
| Connecticut | CT | 18,823 | 19,013 | 101 |
| Delaware | DE | 2,478 | 2,526 | 102 |
| Dist. of Columbia | DC | 45,231 | 46,689 | 103 |
| Florida | FL | 59,912 | 59,953 | 100 |
| Georgia | GA | 26,459 | 27,227 | 103 |
| Guam | GU | 295 | 270 | 92 |
| Hawaii | HI | 4,138 | 4,126 | 100 |
| Idaho | ID | 3,220 | 3,330 | 103 |
| Illinois | IL | 60,805 | 61,259 | 101 |
| Indiana | IN | 12,546 | 13,564 | 108 |
| Iowa | IA | 6,957 | 6,959 | 100 |
| Kansas | KS | 7,777 | 7,855 | 101 |
| Kentucky | KY | 11,607 | 11,876 | 102 |
| Louisiana | LA | 16,930 | 16,965 | 100 |
| Maine | ME | 3,570 | 3,594 | 101 |
| Maryland | MD | 20,999 | 20,996 | 100 |
| Massachusetts | MA | 39,616 | 42,501 | 107 |
| Michigan | MI | 31,918 | 32,131 | 101 |
| Minnesota | MN | 21,426 | 21,944 | 102 |
| Mississippi | MS | 7,312 | 6,723 | 92 |
| Missouri | MO | 22,238 | 22,602 | 102 |
| Montana | MT | 2,728 | 2,844 | 104 |
| Nebraska | NE | 5,069 | 5,117 | 101 |
| Nevada | NV | 5,909 | 6,105 | 103 |
| New Hampshire | NH | 3,307 | 3,309 | 100 |
| New Jersey | NJ | 39,019 | 39,384 | 101 |
| New Mexico | NM | 5,167 | 5,267 | 102 |
| New York | NY | 147,096 | 150,542 | 102 |
| North Carolina | NC | 18,339 | 18,966 | 103 |
| North Dakota | ND | 1,328 | 1,345 | 101 |
| North Mariana Islands | MP | 128 | 127 | 99 |
| Ohio | OH | 36,892 | 36,644 | 99 |
| Oklahoma | OK | 12,146 | 12,357 | 102 |
| Oregon | OR | 11,140 | 11,344 | 102 |
| Pennsylvania | PA | 45,968 | 46,065 | 100 |
| Puerto Rico | PR | 12,142 | 12,454 | 103 |
| Rhode Island | RI | 4,351 | 4,055 | 93 |
| South Carolina | SC | 8,411 | 8,961 | 107 |
| South Dakota | SD | 1,743 | 1,761 | 101 |
| Tennessee | TN | 14,867 | 15,199 | 102 |
| Texas | TX | 70,842 | 73,505 | 104 |
| Utah | UT | 6,984 | 6,215 | 89 |
| Vermont | VT | 2,280 | 2,183 | 96 |
| Virgin Islands [1] | VI | 600 | 750 | 125 |
| Virginia | VA | 21,722 | 21,183 | 98 |
| Washington | WA | 23,151 | 22,276 | 96 |
| West Virginia | WV | 4,572 | 4,618 | 101 |
| Wisconsin | WI | 14,561 | 14,448 | 99 |
| Wyoming | WY | 1,511 | 1,537 | 102 |
| | | | | |
| **TOTAL** | | **1,143,358** | **1,162,124** | **102** |

*Individual state bar associations or licensing agencies were asked to provide the number of resident, active attorneys as of December 31, 2007.

[1] According to their representative, the Virgin Islands had a significant increase in population in 2007.

Copyright © 2008 American Bar Association
Also found at: http://www.abanet.org/marketresearch/resource.html

# EXHIBIT E

AttorneyYellowPages.com







