UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADVICE COMPANY,                                    Case No. C-08-1951 JCS

        Plaintiff(s),                          **ORDER GRANTING MOTION TO**
                              **DISMISS WITHOUT PREJUDICE**
      v.                                         **[Docket No. 41]**

JAMES NOVAK, ET AL.,

        Defendant(s).
_____/

## I.      INTRODUCTION

      Plaintiff Advice Company ("Plaintiff") brings this action for trademark infringement, unfair competition and cyberpiracy arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and for related claims under state and common law, based on Defendants' use of the mark ATTORNEYYELLOWPAGES and domain name www.attorneyyellowpages.com.  Complaint ("Compl.") ¶ 1.  Plaintiff alleges that Defendants Attorney Yellow Pages.com, LLC ("AYPC") and its President, James E. Novak, intentionally used a mark and domain name similar to Plaintiff's registered mark, ATTORNEYPAGES, and domain name, www.attorneypages.com, in order to confuse consumers and advertisers.  Compl. ¶ 16.  Defendants moved to dismiss the action on the ground that this court lacks personal jurisdiction over both defendants, that Plaintiff has filed in an improper forum and, in the alternative, that this action should be transferred to the District of Arizona under 28 U.S.C. § 1404(a).  Corrected Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or Transfer ("Defs.' Corr. Mot. Dismiss") at 1.

      On July 25, 2008, the Court held a hearing on Defendants' motion.  At the hearing, the Court denied Defendants' motion to dismiss without prejudice, and allowed the parties to conduct discovery limited to personal jurisdiction.  Defendants' Request for Judicial Notice ("RJN"), Exhibit C (Hearing Transcript) at 15.  The Court noted that the California contacts were very limited, and

1  inquired as to Defendant Novak's knowledge of Plaintiff's trademark prior to the date of

2  Defendants' use of the mark, thereby knowingly engaging in conduct having an impact in California.

3  *Id.* at 3.  The Court denied Defendants' venue motion.  *Id.* at 14.

4       The parties conducted discovery, including the taking of Defendant James Novak's

5  deposition.  Defendants filed the present renewed motion to dismiss on September 19, 2008.  In

6  violation of the Local Rules and this Court's rules, Plaintiff filed no opposition brief or

7  memorandum of points and authorities; rather, Plaintiff has filed two declarations, which consist

8  largely of argument and unsupported accusations.  The Court therefore considers the declarations of

9  James Greenier ("Greenier Decl. II") and Gerry Goldsholle ("Goldsholle Decl. II) only to the extent

10  that they are based upon personal knowledge of relevant facts.  In addition, the Court considers the

11  deposition transcripts and evidence attached to those declarations for purposes of deciding the

12  renewed motion to dismiss.  Finally, the Court considers the briefs filed in connection with

13  Defendants' initial motion to dismiss.

14       The Court heard argument on Defendants' renewed motion on January 16, 2009.  For the

15  reasons discussed below and stated at the hearing, the Court hereby GRANTS Defendants' motion

16  to dismiss without prejudice for lack of personal jurisdiction.

17  **II.    BACKGROUND**

18       **A.    Facts**

19       Plaintiff Advice Co., a California corporation with its principal place of business in

20  Sausalito, California, provides a searchable directory of lawyers, legal service providers and related

21  information, as well as marketing, directory listings, lead generation and client development services

22  to lawyers.  Compl. ¶ 3.  On December 11, 1997, Advice Co.'s predecessor, Advice & Counsel, Inc.,

23  registered the domain name www.attorneypages.com and in March 1998 began operating a website

24  at that domain and using the mark ATTORNEYPAGES (the "Advice Mark").  Compl. ¶ 10.  Advice

25  Co. filed a use-based trademark application for the Advice Mark with the United States Patent and

26  Trademark Office ("USPTO") on December 10, 1998.  Compl. ¶ 9.  The Advice Mark was

27  registered on the Supplemental Register on August 8, 2000, and this registration is currently valid

28  and owned by Advice Co.  Compl. ¶ 9, Ex. 1.

Defendant Novak is the President of defendant company AYPC, an Arizona limited liability company with its principal place of business in Tempe, Arizona. Compl. ¶ 4. AYPC operates a website offering online business directories featuring attorneys at the domain name www.attorneyyellowpages.com and owns the mark ATTORNEYYELLOWPAGES.COM (the "Novak Mark"). Compl. ¶ 11. Novak registered the Novak Mark on the Supplemental Register of the USPTO on February 28, 2007 and its first use in commerce is listed as December 11, 2006. Compl. ¶ 11. Novak assigned registration of the Novak Mark to AYPC in 2006 and recorded the assignment with the USPTO on April 17, 2008, after the Complaint in this action was filed. Declaration of E. Lynn Perry in Opposition to Motion to Dismiss or Transfer ("Perry Decl.") ¶ 4.

On September 22, 2006, Plaintiff Advice Co. filed an application with the USPTO to register the Advice Mark on the Principal Register. Compl. ¶ 11, Ex. 3. The application was refused registration because of the registration of the Novak Mark on the Supplemental Register issued on February 28, 2007. Compl. ¶ 11. Plaintiff sent Novak a cease and desist letter on November 6, 2007, notifying Novak of the alleged infringement and demanding that he stop using the Novak Mark for competing services. Declaration of Gerry H. Goldsholle in Opposition to Original Motion to Dismiss or Transfer ("Goldsholle Decl. I") ¶ 7. In a phone conversation on December 10, 2007, Novak and Gerry H. Goldsholle, founder and Chief Executive of Advice Co., discussed the sale of the AYPC domain name and website and Novak stated that he had registered 50 state versions of ATTORNEYYELLOWPAGES domain names. Goldsholle Decl. I ¶ 8. Because Defendants refused to stop using the Novak Mark, Plaintiff filed a petition with the Trademark Trial and Appeal Board ("TTAB") to cancel registration of the Novak Mark and subsequently filed this lawsuit. Compl. ¶ 12. The TTAB cancellation proceeding has been suspended pending final determination of this action. Compl. ¶ 12.

**B.      Procedural Background**

On April 14, 2008, Plaintiff filed this action against Novak and AYPC, claiming trademark infringement, unfair competition and cyberpiracy arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and for related claims of state and common law trademark infringement, injury to business reputation, unfair competition, and false advertising. Compl. ¶ 1. In its complaint, Advice Co. seeks an injunction prohibiting further use of the Novak mark and associated domain name, cancellation of

3

1   the registration for the Novak Mark, damages, profits realized by Defendants, and attorneys' fees

2   and costs.  Compl. ¶¶ 29-56.

3           **C.**       **The Motion**

4          Defendants move to dismiss this case on the same ground that was argued in their original

5   motion to dismiss – that this Court does not have personal jurisdiction over either defendant in

6   California.  Defs.' Renewed. Mot. Dismiss at 2.

7          Defendants assert that their contacts with California are insufficient to satisfy the

8   requirements for finding either general or specific jurisdiction.  They state that AYPC has no offices,

9   employees, agents, or properties in California.  Defs.' Corr. Mot. Dismiss, Ex. A (Declaration of

10   James E. Novak in Support of Defendants' Motion to Dismiss or Transfer ("Novak Decl.")) ¶ 4.

11   Defendants describe www.attorneyyellowpages.com as a passive website which "generates its

12   revenue primarily through advertisement agreements with attorneys and law firms for the placement

13   of ads on its website," Defs.' Corr. Mot. Dismiss at 1, Ex. A (Novak Decl.) ¶ 5, 7, using "cookies"

14   merely to track "hits" on the website and not to send targeted advertising to California visitors,

15   Reply Memorandum in Support of Defendants' Motion to Dismiss or Transfer ("Defs.' Reply"), Ex.

16   C (Supplemental Declaration of James E. Novak in Support of Defendants' Motion to Dismiss or

17   Transfer ("Supp. Novak Decl.")) ¶ 22.  While the majority of advertising efforts for AYPC have

18   taken place within the state of Arizona, AYPC has engaged in advertising elsewhere in the form of

19   Internet banner and link ads as well as nationwide mailings.  Defs.' Corr. Mot. Dismiss, Ex. A

20   (Novak Decl.) ¶ 8.   Approximately 7% of the mailings sent between November 2006 and March

21   2007 were sent to attorneys and law firms in California.  Defs.' Corr. Mot. Dismiss, Ex. A. (Novak

22   Decl.) ¶ 8.  In addition, AYPC placed an advertisement in the February and April 2007 issues of Los

23   Angeles Lawyer magazine.  Defs.' Corr. Mot. Dismiss, Ex. A (Novak Decl.) ¶ 8.  No sales have

24   resulted from the California mailings and magazine ads, and AYPC asserts that it "has not received

25   any revenue whatsoever from any California attorney or law firm."  Defs.' Corr. Mot. Dismiss, Ex.

26   A (Novak Decl.) ¶ 9.

27          With respect to Novak, Defendants claim that Plaintiff has not provided any evidence of

28   contacts between Novak in his individual capacity and the State of California and therefore "has

presented no evidence to support piercing AYPC's corporate veil."  Defs.' Reply at 9-10.  Novak, a

practicing attorney, does not have any clients in California and has not visited California in 23 years, Defs.' Corr. Mot. Dismiss, Ex. A (Novak Decl.) ¶¶ 11-12, and denies that he ever offered to sell AYPC's website to Plaintiff or Goldsholle, Defs.' Reply, Ex. C (Suppl. Novak Decl.) ¶ 11.  He is also the sole caretaker of his disabled wife.  Defs.' Corr. Mot. Dismiss, Ex. A (Novak Decl.) ¶ 17.

Plaintiff responded in its Opposition to the first motion to dismiss that Defendants' activities in this State support the exercise of both general and specific jurisdiction.  Plaintiff asserts that "[b]ecause of his position, the size of the company, and his activities on behalf of the company, Novak is essentially AYPC's alter ego," and therefore that "if AYPC does business in this District, by extension Novak does as well."  Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss or Transfer ("Pl.'s Opp'n") at 1, 9.  In support of general jurisdiction, Plaintiff contends that Defendants' contacts with California "combine to constitute 'continuous and systematic' business contacts with the forum" and cites the following activities for support: listing numerous California lawyers and firms on the website for the use of residents of this state; using "cookies" attached to the computers of California visitors to the website to track their preferences and send them targeted advertisements; sending hundreds of mailings to California attorneys soliciting their advertising dollars; participating in the Google "AdSense" and Custom Search advertising programs for which Defendants are paid by Google; running two full page advertisements in Los Angeles Lawyer magazine soliciting advertisements from California lawyers; partnering with LegalZoom.com and other California companies who have contracted with Defendants regarding advertisements on Defendants' website; and soliciting the sale of Defendants' domain name to Plaintiff.  Pl.'s Opp'n at 3.

Plaintiff argues that specific jurisdiction is proper because Defendants purposefully availed themselves of the privileges of doing business in California by entering into advertising relationships with California-based companies such as Google, Inc., LegalZoom.com, acendi.com, and YouTube, LLC.  Pl.'s Opp'n at 5; Declaration of Brian Brown in Opposition to Motion to Dismiss or Transfer ("Brown Decl.") ¶¶ 6, 10.  In particular, the AYPC website appears to participate in the Google AdSense program, which displays advertisements matched to the content of the website, and the Google Custom Search program, which powers the website's search feature. Brown Decl. ¶¶ 7-9.  Both Google programs compensate member websites based on the number of

visitor clicks on advertisements provided by Google, and Google's contracts designate California law and the courts of Santa Clara County in the case of a dispute. Brown Decl. ¶¶ 12, 15, Ex. 6. The AYPC site also displays advertisements for LegalZoom.com, an online legal document provider that pays a share of the revenue it earns when customers click through to its website from Defendants' website and purchase its products, and a YouTube streaming video broadcast. Brown Decl. ¶¶ 10-11.

In addition, Plaintiff alleges that Defendants sold at least one advertisement directly to a California lawyer. Pl.'s Opp'n at 7-8; Declaration of Nicola A. Fraser in Opposition to Motion to Dismiss or Transfer ("Fraser Decl.") ¶ 2-4. In support of specific jurisdiction Plaintiff further points to evidence that the AYPC website lists an email address for those interested in advertising on the site as well as an active "Buy Now" link through which visitors can purchase an advertisement on the site. Brown Decl. ¶ 18, Ex. 19.

Plaintiff further claims that specific jurisdiction is proper because Defendants have purposefully directed their activities at this forum. Pl.'s Opp'n at 5. The Complaint alleges that:

> Defendants adopted and used the Imitation Mark and the Infringing Domain Name despite Plaintiff's established rights in the Mark and with full knowledge of Advice Co.'s competitive business and ownership of the Mark and the Advice Co. Domain Name, and with the intention that consumers, lawyers and law firms would be confused into believing that Defendants' competitive services are sponsored, associated or affiliated in some way with Advice Co.

Compl. ¶ 16. Plaintiff's Opposition goes on to state that Defendants "cannot deny that they were aware of the activities and location of their direct competitor" and that Defendants committed an intentional tort in this district when they directed their infringement at a resident of this District, causing wrongful effects in this District. Pl.'s Opp'n at 6.

Defendants argue that they were unaware of Plaintiff's business, website, and use of the Advice Mark prior to receiving Plaintiff's cease and desist letter in November 2007. At the deposition of Defendant James Novak, counsel for Plaintiff repeatedly asked whether Mr. Novak was aware of Plaintiff's website prior to the commencement of their allegedly infringing activity. Defendant Novak testified that he was not aware of Plaintiff's marks and domain name until Plaintiff's cease and desist letter arrived in November 2007. Russell Decl., Exh. A (Novak Deposition Transcript) at 33.

6

1    Plaintiff also argues, based upon a document produced in discovery, that Defendants had

2    actual knowledge of Plaintiff's business prior to the date Plaintiff's assert Defendants first launched

3    their website – March 2007.  Plaintiff produced a Salesforce.com log entry that indicates contact

4    between a salesperson employed by Plaintiff, Jonathan Kim, and Defendant Novak on February 20,

5    2007, and on three subsequent occasions in July 2007.  Greenier Decl., Exh. A (Salesforce.com sales

6    record).  The entry indicates that Mr. Kim made two proposals to Mr. Novak to list him on

7    AttorneyPages.com.  *Id.*  Defendants argue that there is no indication in the Salesforce.com sales

8    contact log that Plaintiff's salesperson communicated to Mr. Novak that Attorney Pages was a

9    California company.  At the deposition of Gerry Goldsholle, counsel for Defendants asked whether

10   the telephone contacts between Mr. Kim and Mr. Novak referenced in the sales entry log indicate

11   whether Mr. Kim had ever told Mr. Novak that Attorney Pages was a California company.

12   Goldsholle replied "I have nothing – I have no information that Mr. Kim disclosed that Attorney

13   Pages was a California entity when he spoke to Mr. Novak in February 2007."  Russell Decl., Exh.

14   B (Goldsholle Deposition) at 65: 4-8.  Defendants further argue that they receive numerous

15   solicitations, and that this sales document does not undermine the testimony of Defendant Novak

16   that he has no memory of the purported contact with Plaintiff in February 2007.  Def.'s Reply at 5.

17   In any event, Defendants argue that the sales contact is irrelevant due to the fact that they

18   launched their business several months before February 2007.  Defendants contend that their website

19   was launched in mid-November 2006.  Declaration of James Novak in Support of Renewed Motion

20   to Dismiss, ¶ 3; Russell Decl., Exh. A at 47 line 13-14.  Plaintiff argues that the official launch of the

21   Defendant's website occurred on March 1, 2007 and that the prior work performed does not

22   constitute actual use.  It is undisputed that Defendants incorporated their business in October 2006

23   and performed work on the website in the fall of 2006; however, Plaintiff argues that the work

24   performed by Defendants in November 2006 was merely preparatory, and that the actual launch of

25   the website did not occur until March 1, 2007.  Goldsholle Decl. II at 10.  Defendants counter that

26   the evidence cited by Plaintiff does not prove a launch date of March 1, 2007; rather, the document

27   refers to the commencement of an Arizona advertising campaign.  *Id.*, Attachment 1.

28   Plaintiff also argues that it is simply "inconceivable" that Defendants were unaware of

Plaintiff's business based upon Plaintiff's ads in two publications, the American Trial Lawyer's

1   Association and the American Bar Association.  Defendant Novak testified he had received the

2   publications at some point in years past.  Goldsholle Decl. II at p. 7.  Plaintiff argues that even a

3   cursory trademark or domain search would have revealed Plaintiff's prior mark and that, therefore,

4   James Novak cannot be believed when he claims that he had no prior knowledge of Plaintiff's mark.

5   Goldsholle Decl. II at 6.  Defendants argue that there is no evidence to support this assertion, and

6   provide their trademark searches, none of which reveal Plaintiff's trademarks.  Defs.' Reply at 6.

7           Finally, Plaintiff argues that the AYPC website contains 472 pages of California attorney and

8   law firm listings searchable by topic, and the site contains more California attorney and law firm

9   listings than Arizona attorney and law firm listings.  Fraser Decl. ¶¶ 6-8.  Defendants concede in

10  their Reply that the AYPC website contains more California attorney listings than Arizona attorney

11  listings, but respond that the site still primarily targets the state of Arizona since the approximately

12  7,250 Arizona attorneys listed comprise 56.7% of the total active attorneys in Arizona, while the

13  approximately 9,180 California attorneys listed comprise 6.2% of the total active attorneys in

14  California.  Defs.' Reply, Ex. C (Suppl. Novak Decl.) ¶ 14.  It is undisputed that a portion of

15  AYPC's nationwide mailings were sent to California, and that Defendants placed two ads for AYPC

16  in Los Angeles Lawyer magazine.

17          In Defendants' Reply to the initial motion, Novak concedes that AYPC participates in

18  advertising programs with Google and LegalZoom, and responds that "AYPC merely utilized

19  YouTube's freely available code" and does not generate any revenue from YouTube.  Defs.' Reply,

20  Ex. C (Suppl. Novak Decl.) ¶ 23.  Novak also counters that AYPC has generated less than $400 in

21  revenue from its participation in advertising programs with Google and LegalZoom ($350 from

22  Google and $50 from LegalZoom) and that there is no way to know whether any of the income was

23  generated by California visitors.  Defs.' Reply, Ex. C (Suppl. Novak Decl.) ¶ 15.

24  **III.    ANALYSIS**

25          **A.    Personal Jurisdiction Legal Standard**

26          The burden is on the plaintiff to show that personal jurisdiction exists over every particular

27  defendant.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  Where a court considers only

28  affidavits and discovery materials, a plaintiff need only make a prima facie showing of jurisdiction.

*Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Where

facts concerning jurisdiction are disputed or where the court determines that a more satisfactory showing is necessary, a district court may allow discovery to aid in the jurisdiction determination and hold a preliminary hearing at which the parties may present evidence on the issue. *Id.* When such an evidentiary hearing is held, the plaintiff is generally required to establish jurisdiction by a preponderance of the evidence. *Id.*

Unless the plaintiff's version of the facts is directly controverted, the plaintiff's factual allegations are taken as true for the purposes of a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *Doe*, 248 F.3d at 922. Further, "'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Id.* (quoting *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal courts in California may exercise jurisdiction to the extent permitted by the Due Process Clause of the Constitution. *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). The Due Process Clause requires that a nonresident defendant have certain "minimum contacts" with the forum state such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). Federal courts may exercise jurisdiction in accordance with the Due Process Clause where either: 1) the defendant has had continuous and systematic contacts with the state sufficient to subject him or her to the general jurisdiction of the court; or 2) the defendant has had sufficient minimum contacts with the forum to subject him or her to the specific jurisdiction of the court. *Panavision*, 141 F.3d at 1320.

### B.        Personal Jurisdiction Over AYPC

#### 1.        General Jurisdiction

Plaintiff asserts that AYPC's ties to California are sufficient to support a finding of general jurisdiction, which requires that a defendant have "continuous and systematic business contacts" with the forum such that the exercise of jurisdiction is "reasonable and just." *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984). The standard for establishing general jurisdiction is high, requiring that the defendant's contacts approximate physical presence. *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). When evaluating whether the

1    defendant's contacts with a forum support general jurisdiction, a court should consider factors such

2    as whether the defendant makes sales, solicits or engages in business in the state, serves the state's

3    markets, designates an agent for service of process, holds a license, or is incorporated there.  *Id.*

4         In *Bancroft*, the Ninth Circuit found insufficient contacts to establish general jurisdiction

5    over the defendant where the defendant had several license agreements with California businesses;

6    made occasional, unsolicited sales of tickets and merchandise to California residents; and operated a

7    passive website containing an allegedly infringing trademark.  *Id.*  The Court explained that the

8    defendant's license agreements "constitute doing business *with* California, but do not constitute

9    doing business *in* California," and further noted that the defendant was not registered or licensed in

10   California, paid no taxes in California, had no bank accounts in California, and targeted no

11   advertising at California.  *Id.* (emphasis added).  The Ninth Circuit again found insufficient contacts

12   to support general jurisdiction in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th

13   Cir. 2004), citing *Bancroft*'s distinction between doing business *in* a forum and doing business *with*

14   a forum.  There, the defendant car dealership had sales contracts with automobile suppliers in

15   California, some of which contained a choice-of-law provision specifying California law; hired a

16   California-based marketing company and a California-incorporated consulting provider; and

17   maintained an Internet website.  *Id.* at 801.  Finally, in *Jonathan Browning, Inc. v. Venetian Casino*

18   *Resort, LLC*, an action for copyright infringement, the district court held that even an advertising

19   and marketing scheme in California, a large percentage of California customers, and a website that

20   can be accessed by California residents do not meet the high standard of general jurisdiction.   No. C

21   07-3983 JSW, 2007 U.S. Dist. LEXIS 95440, at *9 (N.D. Cal. Dec. 19, 2007).

22        Here, AYPC's contacts with California are not sufficiently continuous and systematic to

23   support general jurisdiction in California.  As in *Bancroft*, Defendants are not licensed to do

24   business in California, pay no taxes in California, and have no assets in California.  Although AYPC

25   has solicited business in the forum through mailing and two magazine advertisements, the

26   solicitations have been intermittent and over a limited period of time (between November 2006 and

27   April 2007) and did not result in any direct sales to California residents.  Such advertising in the

28   forum does not meet the high standard of general jurisdiction.  *See id.*; *see also Shute v. Carnival*

     *Cruise Lines*, 897 F.2d 377, 380 (9th Cir. 1990) (advertising in the local media, mailing brochures,

paying commissions to travel agents, conducting promotional seminars, and selling vacation cruises to forum residents insufficient to support the exercise of general jurisdiction), *rev'd on other grounds*, 499 U.S. 585 (1991); *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir. 1984) (foreign corporation's sales and marketing in forum, including solicitation of orders, the promotion of products to potential customers through the mail and showroom displays, and attendance at trade shows and sales meetings, were not sufficient contacts with the forum to support general jurisdiction).  Although the AYPC website offers a service to California residents, a website accessible to forum residents is not enough to support general jurisdiction, *see, e.g., Schwarzenegger*, 374 F.3d at 801; *Bancroft*, 223 F.3d at 1086, and there is no evidence that the site has been utilized by Californians in a continuous or systematic way.  Further, the advertising agreements AYPC has with California companies "constitute doing business *with* California, but do not constitute doing business *in* California."  *Bancroft*, 223 F.3d at 1086 (emphasis added).  Based on the limited nature of AYPC's contacts with California, this Court does not have general jurisdiction over AYPC.

## 2. Specific Jurisdiction

Courts apply a three-part test to determine whether a district court may exercise specific jurisdiction:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Panavision*, 141 F.3d at 1320 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (quotations omitted)).  The plaintiff bears the burden of satisfying the first two prongs of the test.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

### a. Purposeful Availment/Purposeful Direction

In order to satisfy the first prong of the test, the plaintiff must establish that the defendant either purposefully availed himself of the privilege of conducting business activities within the forum or that the defendant purposefully directed his activities toward the forum.  *Id.*  Although many decisions use the phrase "purposeful availment" to refer to both purposeful availment and

1   purposeful direction, the Ninth Circuit distinguished the two concepts in *Schwarzenegger*, 374 F.3d

2   at 802.  Purposeful availment typically consists of action taking place in the forum that invokes the

3   benefits and protections of the laws of the forum, such as executing or performing a contract there.

4   *Id.*  Purposeful direction usually consists of actions outside the forum state that are directed at the

5   forum.  *Id.* at 803.

6          While purposeful availment can be shown by a defendant's execution or performance of a

7   contract in the forum, *id.* at 802, a contract with a resident of a forum state alone is not enough to

8   confer personal jurisdiction, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  A court

9   should consider prior negotiations, contemplated future consequences, the terms of the contract, and

10  the parties' actual course of dealing to determine whether a defendant's contract with a forum

11  constitutes purposeful availment.  *Id.* at 479.  In *Fujitsu-Icl Sys. v. Efmark Serv. Co. Of Ill., Inc.*, No.

12  00-CV-0777 W (LSP), 2000 U.S. Dist. LEXIS 13862, at *18 (S.D. Cal. June 29, 2000), the district

13  court found the following contacts inadequate to establish purposeful availment: a California choice

14  of law clause in two of three contracts in dispute, the defendant's knowledge that the Plaintiff's

15  performance took place in California, the defendant's attendance at two meetings unrelated to the

16  disputed contracts, and routine business communications between California and the defendant's

17  place of business.  The court cited the Supreme Court's *Burger King, supra*, decision for the

18  proposition that a choice of law provision in a contract is not sufficient to confer personal

19  jurisdiction.  *Id.* at *14 (citing *Burger King*, 471 U.S. at 482).  Further, the court explained that the

20  defendant's knowledge of the plaintiff's performance of the contract in the forum was also

21  insufficient to establish purposeful availment, citing *Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516

22  F.2d 161 (9th Cir. 1975) (plaintiff's performance of a contract in California insufficient for

23  jurisdiction over defendant; defendant's activity must provide basis for jurisdiction under purposeful

24  availment).  *Id.* at * 12.

25         Purposeful direction exists when a defendant has committed an act outside of the forum state

26  that was intended to and does in fact cause injury within the forum.  *Calder v. Jones*, 465 U.S. 783

27  (1984).  In *Calder v. Jones*, actress Shirley Jones initiated an action in California Superior Court

28  suing the editor of the National Enquirer and one of its reporters for libel based upon an article that

appeared in the National Enquirer.  465 U.S. at 784-85.  Both the editor and the reporter lived in

1    Florida (which is also the principal place of business and state of incorporation of the Enquirer), and

2    the reporter conducted the research for the story by making telephone calls to sources in California.

3    *Id.* at 785-86.  The reporter made frequent trips to California on business, but it was disputed

4    whether one of those trips was made in connection with the article at issue.  *Id.*  The editor had been

5    to California twice–once on pleasure and once to testify in an unrelated trial.  *Id.*  The editor

6    approved the article, edited in its final form, and later refused to print a retraction.  *Id.*  The Supreme

7    Court found that California jurisdiction over both defendants was proper because California was the

8    "focal point both of the story and the harm suffered," and therefore the effects of the defendants'

9    actions were felt in California.  *Id.*  at 789.  In reaching this conclusion, the Court emphasized that

10   "petitioners are not charged with untargeted negligence.  Rather, their intentional and allegedly

11   tortious, actions were expressly aimed at California.  Petitioner South wrote and petitioner Calder

12   edited an article that they knew would have a potentially devastating impact upon respondent."  *Id.*

13   Although the Court noted that an employee's contacts with a forum "are not to be judged according

14   to their employer's activities there," it concluded that "petitioners are primary participants in an

15   alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is

16   proper on that basis."  *Id.* at 790.  The Court also made clear that in reaching this conclusion it did

17   not rely on the finding of the superior court that the reporter who wrote the story had visited

18   California in connection with the story.  *Id.* at 785 n.4.

19          The *Calder* "effects test" was applied in the context of the Internet in *Panavision v. Toeppen*,

20   141 F.3d 1316 (9th Cir. 1998).  There, the defendant, an Illinois resident, had registered a domain

21   name using the plaintiff's trademark, panavision.com.  *Id.* at 1319.  (In fact, the defendant had

22   registered domain names for many other companies as well, including Delta Airlines, Nieman

23   Marcus, Eddie Bauer and Lufthansa, *id.*).  When the plaintiff sought to register the domain name

24   panavision.com, it discovered that it could not do so.  *Id.*  The plaintiff then sent the defendant a

25   letter demanding that it stop using the plaintiff's trademark.  *Id.*  The defendant, in turn, demanded a

26   "settlement" of $13,000 in exchange for releasing the domain name.  *Id.*  When the plaintiff refused

27   to pay, the defendant registered the name panaflex.com, another of the plaintiff's trademarks.  *Id.*

28   The plaintiff brought an action in California alleging trademark dilution, and the defendant moved to

1   dismiss on the basis that the court lacked personal jurisdiction.  Applying the effects test, the district

2   court found that it had jurisdiction and the Court of Appeals affirmed.  *Id.* at 1317.

3          The Court of Appeals in *Panavision* went through the three-part test for specific jurisdiction,

4   applying the effects test to satisfy the first factor.  *Id.* at 1320-23.  Noting that the effects test applies

5   to tort cases and that a trademark infringement claim is akin to a tort case, the court stated that the

6   effects test requires: "1) intentional actions; 2) expressly aimed at the forum state; 3) causing harm,

7   the brunt of which is suffered - *and which the defendant knows is likely to be suffered* - in the forum

8   state."  *Id.* at 1321 (emphasis supplied).  The court concluded that while "simply registering

9   someone else's trademark as a domain name and posting a web site on the Internet is not sufficient

10  to subject a party domiciled in one state to jurisdiction in another . . . Toeppen engaged in a scheme

11  to register Panavision's trademarks as his domain names for the purpose of extorting money from

12  Panavision," and therefore satisfied the requirements of the effects test.  *Id.* at 1322.  The court in

13  *Panavision* went on to conclude that the other two requirements for specific jurisdiction had also

14  been met.  *Id.*  Specifically, the court found that the plaintiff's claims arose out of the conduct that

15  gave rise to effects in California and that the exercise of jurisdiction was reasonable.  *Id.*

16         In contrast, in *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997), the Ninth

17  Circuit rejected the plaintiff's argument that the defendant was subject to personal jurisdiction for

18  failure to satisfy the first part of the test for specific jurisdiction, "purposeful availment."  There, the

19  plaintiff was an Arizona Corporation named "Cybersell," incorporated in May 1994 ("Cybersell

20  AZ").  *Id.* at 415.  Cybersell AZ filed an application to register the name as a service mark in August

21  1994 and posted its website at the same time.  *Id.*  The website was taken down for reconstruction

22  six months later in February 1995, and the application to register the service mark was approved in

23  October 1995.  *Id.*  During the summer of 1995 (after the website was taken down and before the

24  service name was registered), defendants Matt Certo (a business student) and his father, Dr. Samuel

25  Certo (a business school professor) formed Cybersell, Inc., a Florida corporation ("Cybersell FL").

26  *Id.*  The purpose of Cybersell FL was to provide business consulting services for strategic

27  management and marketing on the web.  *Id.*  Defendants also created a website with the domain

28  name cybersell.com that included a logo containing the word "CyberSell," a caption reading

    "Welcome to CyberSell," and an invitation for companies to email Cybersell FL to learn more about

its services. *Id.* at 415-16. In November 1995, one of the principals of Cybersell AZ found the Cybersell FL website and sent an email notifying the defendants that Cybersell was a service mark of Cybersell AZ. *Id.* In response, Cybersell FL changed its name to WebSolvers, Inc. and removed the Cybersell Logo from the home page. *Id.* The page continued to read, "Welcome to CyberSell." *Id.*

Cybersell AZ filed an action in Arizona alleging trademark infringement, unfair competition, fraud and RICO violations. *Id.* On the same day, Cybersell FL filed suit for declaratory relief in Florida district court and that action was transferred to Arizona and consolidated with the Cybersell AZ action. *Id.* The district court then granted Cybersell FL's motion to dismiss for lack of personal jurisdiction. *Id.* The Ninth Circuit affirmed, finding that the defendants' contacts with Arizona were not sufficient to satisfy the first prong of the three-part test for specific jurisdiction. *Id.* at 419-420. In reaching this conclusion, the court looked to the handful of cases from other jurisdictions that have addressed Internet activity as a basis for personal jurisdiction. The court concluded that "the common thread [of these cases] is that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 419 (citing *Zippo Mfg., Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

Applying this principal, the court found that Cybersell FL's activities were not sufficient to subject it to the jurisdiction of the Arizona district court. (Arizona, like California, has a long-arm statute that allows federal courts to exercise jurisdiction to the extent allowed by the Constitution). Because "no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state," there must be "'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Id.* at 418. The court was not convinced that Cybersell FL had "deliberately directed its merchandising efforts toward Arizona residents" because "Cybersell FL's web page simply was not aimed intentionally at Arizona knowing that harm was likely to be caused there to Cybersell AZ." The court stated:

> Cybersell FL has conducted no commercial activity over the Internet in Arizona. All that it did was post an essentially passive home page on the web, using the name "CyberSell," which Cybersell AZ was in the process of registering as a federal service mark. While there

is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that Cybersell FL deliberately directed its merchandising efforts toward Arizona residents.  Cybersell FL did nothing to encourage people in Arizona to access its site, and there is no evidence that any part of its business (let alone a continuous part of its business) was sought or achieved in Arizona.  To the contrary, it appears to be an operation where business was primarily generated by the personal contacts of one of its founders.  While those contacts are not entirely local, they aren't in Arizona either.  No Arizonan except for Cybersell AZ "hit" Cybersell FL's web site.  There is no evidence that any Arizona resident signed up for Cybersell FL's web construction services.  It entered into no contracts in Arizona, made no sales in Arizona, received no telephone calls from Arizona, earned no income from Arizona, and sent no messages over the Internet to Arizona.  The only message it received over the Internet from Arizona was from Cybersell AZ.  Cybersell FL did not have an "800" number, let alone a toll-free number that also used the "Cybersell" name.  The interactivity of its web page is limited to receiving the browser's name and address and an indication of interest - signing up for the service is not an option, nor did anyone from Arizona do so.  No money changed hands on the Internet from (or through) Arizona.  In short, Cybersell FL has done no act and has consummated no transaction, nor has it performed any act by which it purposefully availed itself of the privilege of conducting activities, in Arizona, thereby invoking the benefits and protections of Arizona law.

*Id.* at 419.  The court noted that if it were to find jurisdiction solely on the basis that Cybersell AZ has alleged trademark infringement over the Internet, "every complaint arising out of alleged trademark on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located.  That would not comport with traditional notions of what qualifies as purposeful activity invoking the benefits and protections of the forum state."  *Id.* at 420.

A subsequent case decided by the district court in Arizona read *Cybersell* as supporting the conclusion that where an Internet advertisement does result in the transaction of business with the forum state's residents, there is purposeful availment in a trademark infringement action where the advertisement in question includes the allegedly infringing trademark.  *Park Inns International v. Pacific Plaza Hotels, Inc.*, 5 F. Supp. 2d 762 (D. Ariz. 1998).  In *Park Inns*, the defendant used the name "park plaza" in connection with its Oakland hotel and took reservations over the Internet.  The plaintiff sued in Arizona alleging trademark infringement.  Addressing the question of whether there was specific jurisdiction, the court found purposeful availment based upon its finding that: 1) seven reservations were made over the Internet by Arizona residents who hit the defendant's website, *id.* at 764; 2) the defendant posted its hotel profile on an automated computer reservation system used mainly by travel agents and at least thirteen reservations were made by Arizona travel agents, *id.* at 765; 3) the defendant's hotel profile appeared in publications distributed to Arizona residents, including the AAA TourBook, *id.*; 4) the defendants paid 32 commissions to Arizona travel agents,

1   *id.*  The court went on to hold that the claims arose out of these contacts, even though it could not be

2   said that the claim would not have existed but for the contacts listed above.  *Id.* at 766.  The court

3   held that it was enough that the mark "park plaza" was used on the Internet website and in printed

4   publications about defendant's hotel.  *Id.*  The court also held that the effects test applied, stating

5   that "[b]ased on Defendant's solicitations of business in Arizona which solicitations used the

6   allegedly infringing mark, the court concludes that Defendants have expressly directed their tortious

7   actions to Arizona."  *Id.*

8          The Oregon district court also found sufficient minimum contacts with Oregon to support

9   personal jurisdiction in *Tech Heads, Inc. v. Desktop Service Center, Inc.*, 105 F. Supp. 2d 1142 (D.

10  Or. 2000).  There, the plaintiff, Tech Heads, offered computer-related services under the service

11  marks TECHEADS and TECH HEADS and advertised its business on its website at

12  www.techeads.com.  *Id.* at 1144.  The defendant, Desktop, offered similar services to those offered

13  by the plaintiff and advertised them using the mark TECHEAD on its website, www.techead.com,

14  and in its advertising in print media, television, radio, trade publications, and a nationally circulated

15  newspaper.  *Id.* at 1145.  The plaintiff filed a complaint against the defendant for trademark

16  infringement, and the defendant moved to dismiss the suit for lack of personal jurisdiction.  *Id.* at

17  1146.

18         In its analysis of whether Desktop's contacts with the forum state were sufficient to support

19  specific jurisdiction, the court applied the effects test narrowly, asking whether Desktop had

20  "intentionally targeted Tech Heads itself."  *Id.* at 1148.  The court concluded that the effects test was

21  not satisfied because there was insufficient evidence that the defendant "intentionally directed its

22  activities at Oregon intending harm to Tech Heads."  *Id.*  The court went on to hold that it could,

23  nonetheless, exercise personal jurisdiction over Desktop on the basis that the use of another's

24  trademark in an Internet domain name and website plus "something more" demonstrating that the

25  defendant directed his activity at the forum state is sufficient to support the exercise of jurisdiction.

26  *Id.*  The court found that there was "something more" to support personal jurisdiction over the

27  defendant because Desktop's website allowed users to exchange information with Desktop through

28  the site, get help with technical projects and questions, search a database of resumes, and post a

resume.  *Id.* at 1150.  In addition, Tech Heads offered evidence of one actual transaction involving

an Oregon resident that took place through Desktop's website. *Id.* Stating that "the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts," the court concluded that the defendant's interactive website, national advertising efforts, and Internet transaction with at least one Oregon resident combined to establish sufficient minimum contacts with the forum to support the exercise of personal jurisdiction. *Id.* at 1150-51. In its finding of jurisdiction, the court specifically rejected the plaintiff's argument that the letters sent by the defendant's counsel to the plaintiff's counsel in response to the threat of litigation demonstrated purposeful availment, echoing the Supreme Court's statement in *Burger King*, 471 U.S. at 474-75, that contacts attributable to the unilateral action of the plaintiff or a third party cannot be attributed to the defendant. *Id.* at 1151.

More recently, the Ninth Circuit applied the effects  test in *Pebble Beach Co. v. Caddy* and affirmed the district court's dismissal for lack of personal jurisdiction. *Pebble Beach*, 453 F.3d at 1156. There, the defendant, Michael Caddy, owned and operated a bed and breakfast in southern England called "Pebble Beach" and advertised the inn on his website www.pebblebeach-uk.com. *Id.* at 1153. The website provided general information about accommodations and an inquiry form for visitors' questions but did not have an online reservation system. *Id.* at 1153-54. Plaintiff Pebble Beach, a golf course and resort located in Monterey County, California that had used "Pebble Beach" as its trade name for 50 years, sued Caddy for intentional infringement and dilution of its "Pebble Beach" mark. The district court dismissed the suit for lack of personal jurisdiction, and the Ninth Circuit affirmed.

The Ninth Circuit first distinguished between purposeful availment and purposeful direction and noted that a purposeful direction analysis was appropriate since "[a]ll of Caddy's action identified by Pebble Beach is action taking place outside the forum." *Id.* at 1155-56. The court then applied the effects test to determine whether the defendant had "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which *the defendant knows is likely to be suffered in the forum state*." *Id.* at 1156 (emphasis supplied). The court emphasized that a mere foreign act with foreseeable effects in the forum does not give rise to specific jurisdiction–there must be "something more" to satisfy the express aiming requirement and give rise to specific jurisdiction. *Id.* The court defined "something

more" as action directed at the forum state such as individualized targeting of a forum resident. *Id.* at 1156-1157. Concluding that the defendant's "only substantial action is a domain name and non-interactive web site," the court affirmed its position in *Cybersell* and *Panavision* that a passive website alone does not constitute express aiming. *Id.* at 1157-58. The court stated that "the fact that Caddy's website is not directed at California is controlling" and concluded that the express aiming requirement had not been met. *Id.* at 1158.

Finally, in *The Bear Mill, Inc. v. Teddy Mountain, Inc.*, No. 2:07-CV-492-EJL-LMB, 2008 U.S. Dist. LEXIS 38007 (D. Idaho May 20, 2008), the Idaho district court held that when a website is not otherwise expressly aimed at the forum state, the fact that the plaintiff and defendant are competitors can constitute the "something more" required to satisfy the effects test. The plaintiff in *The Bear Mill* was an Idaho corporation engaged in retail and wholesale sales of stuffed animals and accessories with its principal place of business in Idaho. *Id.* at *1-2. The defendant was a Canadian corporation who operated a website at www.teddymountain.com through which customers could order stuffed animals, inquire about franchise opportunities, and view store locations. *Id.* at *2. The plaintiff brought suit for trademark infringement for the defendant's unauthorized references on its website to trademarks owned by the plaintiff. *Id.* Noting that "[m]isappropriation of a trademark is an intentional tort," the court applied the effects test to evaluate whether the defendants activities had been purposefully directed at the forum. *Id.* at *10. The district court rejected the plaintiff's argument that the defendant had used the trademarks with the express purpose of harming the plaintiff, concluding that the defendant "maintains a website with the express purpose of operating a teddy bear and franchise business rather than for the express purpose of harming Plaintiffs." *Id.* at *16. The court went on to find, however, that although "the operation of a website without a scheme to extort money or otherwise cause harm is insufficient to establish that Defendant targeted Plaintiffs," the effects test could still be satisfied by the website if there was "something more." *Id.* The court concluded that the fact that the parties were competitors and that the *defendant had actual knowledge that the plaintiff's principal place of business was in Idaho* satisfied the "something more" requirement of the effects test. *Id.* at *17-19.

In the present case, AYPC's contacts with California do not satisfy the requirements for purposeful availment. AYPC has not executed or performed its advertising contracts with California

1   companies within the forum, *see Schwarzenegger*, 374 F.3d at 802, AYPC had no prior negotiations

2   with the companies, and there is no evidence that AYPC had any contact with the companies

3   subsequent to the formation of the contracts, *Burger King*, 471 U.S. at 479.  Nor is it enough that

4   AYPC had knowledge when entering into contracts with companies whose principal place of

5   business was in California that those companies would perform their part of the contract within

6   California.  Such knowledge is insufficient to establish purposeful availment because the activity is

7   attributable to third-party companies and not to Defendants themselves.  *See Fujitsu-Icl Sys.*, 2000

8   U.S. Dist. LEXIS 13862, at *12; *Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d at 167.  The

9   choice-of-law clause in Google's contract is also not determinative.  *See Fujitsu-Icl Sys.*, 2000 U.S.

10  Dist LEXIS 13862, at *14 (citing *Burger King*, 471 U.S. at 482).  Finally, any discussion of the sale

11  of the AYPC domain name and website that may have occurred between Novak and Goldsholle in

12  the phone conversation on December 10, 2007 should not be considered in the purposeful availment

13  analysis because this contact was the result of the unilateral act of Advice Co. (sending a cease and

14  desist letter).  *Burger King*, 471 U.S. at 474-75.

15          Plaintiff also claims that AYPC has purposefully directed its activity toward this forum.

16  Although a closer question, the Court finds that there is insufficient evidence to satisfy the effects

17  test.  Trademark infringement is a tort-like cause of action, so the effects test should be applied to

18  determine whether AYPC committed (1) intentional actions (2) expressly aimed at the forum state

19  (3) causing harm, the brunt of which is suffered – and which the defendant knows is likely to be

20  suffered – in the forum state.  *Panavision*, 141 F.3d at 1321.  At the hearing on the initial motion to

21  dismiss, the Court inquired regarding Defendant's knowledge of Plaintiff's California website prior

22  to launching his business for purposes of establishing whether Defendants knew that their conduct

23  would be impacting a California resident.  As in *Pebble Beach, supra*, this knowledge could provide

24  the "something more" necessary to satisfy the third prong of the effects test.

25          Plaintiff fails to meet his burden under the third prong of the effects test due to the lack of

26  evidence that Defendants had knowledge that Plaintiff was located in California.  The third part of

27  the effects test requires that the defendant's actions have caused harm, the brunt of which is suffered

28  *– and which the defendant knows is likely to be suffered* – in the forum state.  *Panavision*, 141 F.3d

    at 1321.  Because Plaintiff is a California corporation with its principal place of business in the

1   Northern District of California, the alleged infringement of Plaintiff's trademarked term causes harm

2   in California. *See The Bear Mill*, 2008 U.S. Dist. LEXIS 38007, at *19-20 (business generated by

3   the defendant as a result of using the plaintiff's trademarked material has the effect of injuring the

4   plaintiff in Idaho, its place of business); *Panavision*, 141 F.3d at 1322 (the defendant's infringing

5   activity injured the plaintiff in California, its principal place of business).  A key aspect of this

6   analysis, however, is whether Defendants' conduct was done with actual *knowledge* of Plaintiff's

7   trademark use in California.  This third prong prompted the Court to order discovery related to

8   personal jurisdiction in this case.

9       The parties have now completed personal jurisdiction discovery.  Plaintiff's allegation that

10  Defendants had actual knowledge of Plaintiff's business prior to the launching of Defendants'

11  allegedly infringing business is disputed.[1]  Indeed, the only evidence properly before the Court

12  indicates that Defendants had no knowledge of Plaintiff's trademark until November 2007, the date

13  of Plaintiff's cease and desist letter.  Plaintiff argues that a February 20, 2007 entry in a

14  Salesforce.com log establishes that Defendant Novak had actual knowledge of Plaintiff's trademark

15  use prior to March 2007, when Defendant allegedly launched his website.  Plaintiff has presented no

16  evidence to support this conclusion.  Defendants testified that they launched their business in

17  November or December of 2006, not in March of 2007 as Plaintiff alleges.  A marketing letter

18  produced in discovery does not disprove this fact.  *See* Goldsholle Decl. II at 10.  Plaintiff misreads

19  the letter.  The letter says nothing about the website launch date.  Gerry H. Goldsholle Decl. II, Exh.

20  1.

21      In any event, there is no evidence that Defendants knew that Plaintiff was located in

22  California – even if they were aware of Plaintiff's website.  The Salesforce.com document contains

23  no indication that the location of Plaintiff's business was discussed.  Defendant testified that they

24

25

26      [1]Plaintiff argues in the Declaration of Gerry Goldsholle that Defendant and his lawyer were
27  obstructionist at the deposition of Defendant Novak, that Defendant's lawyer violated the rules by
    improperly coaching his client with speaking objections, directing Defendant not to answer questions
28  and refusing to produce documents.  No discovery disputes related to these allegations were brought
    before the Court for consideration.  The time for such arguments has passed and these objections are
    overruled.  The Court declines to make general credibility findings based upon the conduct of lawyers
    at a deposition, when no discovery motions were filed by Plaintiff.

1   first became aware of Plaintiff (and presumably its location) when they received the cease and desist

2   letter.

3          Accordingly, there is no evidence that Defendants committed intentional infringement of the

4   mark of a California company sufficient to establish purposeful direction of its activities toward

5   California.  Plaintiff has failed to establish under the third prong of the effects test that AYPC had

6   knowledge that the harm caused by Defendants' use of an infringing mark would likely be suffered

7   in California.  *See The Bear Mill*, 2008 U.S. Dist. LEXIS 38007, at *19-20.

8          Finally, because the Court finds that Plaintiff has failed to meet its burden of establishing

9   personal jurisdiction under the effects test, the Court does not reach the second and third inquiries in

10  the test for specific jurisdiction – whether Plaintiff's claim arises out of the Defendants' forum-

11  related activities and whether the exercise of jurisdiction would be reasonable.

12  **IV.    CONCLUSION**

13         For the reasons stated above, Plaintiff has not established that Defendants purposely directed

14  their activities to the Northern District of California to support a finding of specific personal

15  jurisdiction.  Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED for lack

16  of personal jurisdiction.  The complaint is dismissed without prejudice.

17         IT IS SO ORDERED.

18  Dated: January 23, 2009

19

20  _____

21  JOSEPH C. SPERO
    United States Magistrate Judge

22

23

24

25

26

27

28